IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| AMERICAN VIDEO GRAPHICS, L.P. § | | |
| § | | |
| Plaintiff, § | | CIVIL ACTION |
| § | | |
| § | | 6:04-CV-398-LED |
| vs. § | | |
| § | | |
| ELECTRONIC ARTS, INC., *et al.*, § | | JURY TRIAL |
| § | | |
| Defendants. § | | |

## SECOND AMENDED COMPLAINT

Pursuant to this Court's Docket Control Order entered January 27, 2005, Plaintiff American Video Graphics, L.P. ("AVG"), files this Second Amended Complaint for infringement of U.S. Patent No. 4,734,690 ("the '690 Patent") under 35 U.S.C. § 271. A copy of the '690 Patent is attached as Exhibit A.

## PARTIES

1. Plaintiff AVG is a limited partnership, organized under the laws of the State of Texas. AVG maintains its principal place of business at 505 E. Travis Street, Suite 210, Marshall, Texas 75670.

2. Upon information and belief, Defendant Electronic Arts, Inc. ("Electronic Arts"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 209 Redwood Shores Parkway, Redwood City, CA 94065. Electronic Arts manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

3. Upon information and belief, Defendant Take-Two Interactive Software, Inc. ("Take-Two"), is, and at all relevant times mentioned herein was, a corporation organized and

existing under the laws of the State of Delaware, with its principal place of business at 622 Broadway, New York, NY 10012. Take-Two manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

4.	Upon information and belief, Defendant Ubisoft ("Ubisoft"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 625 3rd St., Fl. 3, San Francisco, CA 94107-1918. Ubisoft is also known variously (*e.g.,* on its website) as "Ubi Soft" and "UbiSoft." References hereinto "Ubisoft" include "Ubi Soft" and "UbiSoft." Ubisoft manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

5.	Upon information and belief, Defendant Activision, Inc. ("Activision"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3100 Ocean Park Blvd., Santa Monica, CA 90405. Activision manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

6.	Upon information and belief, Defendant Atari, Inc. ("Atari"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 417 Fifth Avenue, New York, NY 10016. Atari manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

7.	Upon information and belief, Defendant THQ, Inc. ("THQ"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 27001 Agoura Road, Calabasas Hills,

Austin 19453v1

CA 91301.  THQ manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

8.   Upon information and belief, Defendant Vivendi Universal Games, Inc. ("Vivendi"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 6080 Center Drive, 10th Floor, Los Angeles, CA 90045.  Vivendi manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

9.   Upon information and belief, Defendant Sega of America, Inc. ("Sega"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 650 Townsend Street, Suite 650, San Francisco, CA 94103-4908.  Sega manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

10.   Upon information and belief, Defendant Square Enix, Inc. ("Square Enix"), is, and at all relevant times mentioned herein was, a corporate subsidiary of Square Enix Co., Ltd. of Japan, with its principal place of business at 6060 Center Dr., Suite 100, Los Angeles, CA 90045.  Square Enix manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

11.   Upon information and belief, Defendant Tecmo, Inc. ("Tecmo"), is, and at all relevant times mentioned herein was, a corporate subsidiary of Tecmo, Ltd., a Japanese entity, with its principal place of business at Hawthorne Blvd., Torrance, CA 90503.  Tecmo manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

12. Upon information and belief, Defendant LucasArts Entertainment Co. ("LucasArts"), is, and at all relevant times mentioned herein was, a subsidiary of Lucasfilm Entertainment Co., Ltd., with its principal place of business at P.O. Box 10228, San Rafael, CA 94912. LucasArts manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

13. Upon information and belief, Defendant Namco Hometek, Inc. ("Namco"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, and a corporate subsidiary of Namco, Ltd., a Japanese entity, with its principal place of business at 2055 Junction Ave., San Jose, CA 95131. Namco manufacturers for sale and/or sells video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

14. Upon information and belief, Defendant Sony Online Entertainment, Inc. ("Sony Online"), a subsidiary of Sony Pictures Entertainment, Inc. which is a subsidiary of Sony America, is, and at all relevant times mentioned herein was, a Delaware corporation with its principal place of business at 8928 Terman Court, San Diego, California.

15. Upon information and belief, Defendant Sony Computer Entertainment America, Inc. ("SCEA") is a subsidiary of Tokyo-based Sony Computer Entertainment, Inc., which is a subsidiary of Sony Corporation of Japan. SCEA is, and at all relevant times mentioned herein was, a Delaware corporation with its headquarters and principal place of business at 919 East Hillsdale Boulevard, Foster City, California.

16. The Sony entities identified in paragraphs 14-15 will be referred to collectively herein as "Sony."

17. Upon information and belief, Defendant Microsoft Corporation ("Microsoft"), is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Microsoft Way, Redmond, WA 98052-6399. Microsoft manufactures for sale and/or sells video game consoles and video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

18. Upon information and belief, Defendant Nintendo of America, Inc. ("Nintendo"), a wholly-owned subsidiary of Japan-based Nintendo Co., Ltd., is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 209 Redwood Shores, Parkway Redwood City, CA 94065. Nintendo manufactures for sale and/or sells video game consoles and video games to consumers in the United States and, more particularly, in the Eastern District of Texas.

**JURISDICTION AND VENUE**

19. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §1338(a).

20. This Court has personal jurisdiction over each Defendant. Each Defendant has conducted and does conduct business within the State of Texas. Each Defendant, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products in the United States, the State of Texas, and the Eastern District of Texas. Each Defendant has purposefully and voluntarily placed one or more of its infringing products, as described below in Count 1, into the stream of commerce with the expectation that they will be purchased by consumers in the Eastern District of Texas. These infringing products have been and continue to

be purchased by consumers in the Eastern District of Texas. Each Defendant has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

21.     Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 and 1400(b).

## INFRINGEMENT OF U.S. PATENT NO. 4,734,690

22.     AVG refers to and incorporates herein the allegations of Paragraphs 1-21 above.

23.     United States Patent No. 4,734,690 ("the '690 Patent"), entitled "Method and Apparatus for Spherical Panning," was duly and legally issued by the United States Patent and Trademark Office on March 29, 1988, after full and fair examination. AVG is the assignee of all rights, title, and interest in and to the '690 Patent and possesses all rights of recovery under the '690 Patent.

24.     Defendant Electronic Arts manufactures and /or sells video games for play on video game consoles and/or Personal Computers ("video game players") incorporating three-dimensional ("3-D") panning functionality, including, for example, "NCAA Football 2005" for Nintendo GameCube, and "Ty the Tasmanian Tiger" for Microsoft Xbox. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Electronic Arts uses these video games on video game players, for example, in testing. Electronic Arts also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Electronic Arts also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Electronic Arts

6

knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

25.  Defendant Take-Two manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Railroad Tycoon 3" for personal computers and "Rune: Viking Warlord" for the Sony PlayStation 2. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Take-Two uses these video games on video game players, for example, in testing. Take-Two also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Take-Two also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Take-Two knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

26.  Defendant Ubisoft manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Beyond Good & Evil" for PlayStation 2. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Ubisoft uses these video games on video game players, for example, in testing. Ubisoft also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Ubisoft also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning

functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Ubisoft knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

27.    Defendant Activision manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Shrek 2" for the Xbox and "Spiderman 2" for the GameCube. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Activision uses these video games on video game players, for example, in testing. Activision also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Activision also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Activision knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

28.    Defendant Atari manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Taz: Wanted" for the GameCube, "Oddworld: Munch's Oddyssey," for the Xbox, and "Neverwinter Nights" for personal computers. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Atari uses these video games on video game players, for example, in testing. Atari also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers

of these video games use them in the manner as instructed. Atari also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Atari knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

29.     Defendant THQ manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Full Spectrum Warrior" for the Xbox. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. THQ uses these video games on video game players, for example, in testing. THQ also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. THQ also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and THQ knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

30.     Defendant Vivendi manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Metal Arms: Glitch in the System" for the PlayStation 2, and "The Hobbit," for the GameCube. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Vivendi uses these video games on video game players, for example, in testing.

9

Vivendi also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Vivendi also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Vivendi knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

31.     Defendant Sega manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Super Monkey Ball 2" for the GameCube. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Sega uses these video games on video game players, for example, in testing. Sega also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Sega also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Sega knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

32.     Defendant Square Enix manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Front Mission 4" and "Final Fantasy XI" for the PlayStation 2. The use of these video games on a video game

player practices the 3-D panning invention as claimed in the '690 Patent. Square Enix uses these video games on video game players, for example, in testing. Square Enix also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Square Enix also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Square Enix knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

33. Defendant Tecmo manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Dead or Alive: Xtreme Beach Volleyball" for the Xbox. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Tecmo uses these video games on video game players, for example, in testing. Tecmo also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Tecmo also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Tecmo knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

34. Defendant LucasArts manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Wrath

11

Unleashed" for the Xbox. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. LucasArts uses these video games on video game players, for example, in testing. LucasArts also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. LucasArts also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and LucasArts knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

35. Defendant Namco manufactures and /or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "I-Ninja" for the PlayStation 2. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Namco uses these video games on video game players, for example, in testing. Namco also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Namco also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Namco knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

36. Defendant Sony manufactures and/or sells video games for play on video game consoles and/or Personal Computers ("video game players") incorporating three-dimensional ("3-D") panning functionality, including, for example, "Champions of Norrath" and "Syphon Filter: The Omega Strain," for the PlayStation 2, and "Lords of EverQuest" for personal computers. The use of these video games on a video game player practices the 3-D panning invention as claimed in the '690 Patent. Sony uses these video games on video game players, for example, in testing. Sony also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Sony also contributes to the use of the claimed method by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Sony knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

37. Defendant Nintendo manufactures and/or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "The Legend of Zelda: The Windwaker," for the GameCube. The use of such video games on a video game player practices the 3-D panning method as claimed in the '690 Patent. Nintendo uses these video games on video game players, for example, in testing. Nintendo also induces the use of the claimed method and apparatus by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Nintendo also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of

Austin 19453v1

commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Nintendo knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

38.     Defendant Microsoft manufactures and/or sells video games for play on video game players incorporating 3-D panning functionality, including, for example, "Nightcaster," "Azurik," and "MechAssault," for the Xbox. The use of these video games on a video game player practices the 3-D panning method as claimed in the '690 Patent. Microsoft uses these video games on video game players, for example, in testing. Microsoft also induces the use of the claimed method by selling these video games with instructions for use on a video game player, intending that the purchasers of these video games use them in the manner as instructed. Microsoft also contributes to the use of the claimed method and apparatus by selling video games incorporating a 3-D panning functionality, which are not a staple article of commerce capable of substantial noninfringing use, but rather have no substantial use other than to be used as intended on a video game player, and Microsoft knows that these games are especially made or especially adapted for use in the claimed 3-D panning method.

39.     By virtue of the foregoing, each Defendant is infringing one or more claims of the '690 Patent under 35 U.S.C. § 271 by performing, without authority, one or more of the following acts: (a) making, using, offering to sell, and selling within the United States the invention of one or more claims of the '690 Patent; (b) importing into the United States the invention of one or claims of the '690 Patent; (c) inducing infringement of one or more claims of the '690 Patent; and (d) contributing to infringement of one or more claims of the '690 Patent.

40.     AVG has at all times complied with 35 U.S.C. § 287.

41.    Each Defendant has knowledge of the '690 Patent, and has not ceased its infringing activities. Each Defendant's infringement of the '690 Patent has been and continues to be willful and deliberate.

42.    As a result of Defendants' acts of infringement, AVG has suffered and will continue to suffer damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

AVG prays for the following relief:

A.    A judgment that each Defendant has infringed the Patent-in-Suit, directly and/or indirectly by way of inducing infringement and/or contributing to the infringement of the Patent-in-Suit;

B.    A judgment and order requiring each Defendant to pay AVG damages under 35 U.S.C. § 284, including treble damages for willful infringement as provided by 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting as needed;

C.    A judgment and order requiring each Defendant to pay AVG pre-judgment and post-judgment interest on the damages awarded;

D.    A judgment and order finding this to be an exceptional case and requiring each Defendant to pay the costs of this action (including all disbursements) and attorneys fees as provided by 35 U.S.C. § 285; and

E.    Such other and further relief as the Court deems just and equitable.

Austin 19453v1

## DEMAND FOR JURY TRIAL

AVG hereby demands that all issues be determined by jury.

DATED:  February 7, 2005                    Respectfully submitted,

                                                               /s/ Sam Baxter
Sam Baxter
Attorney-in-Charge
Texas State Bar No. 01938000
McKool Smith, P.C.
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Telecopier: (903) 927-2622
sbaxter@mckoolsmith.com

Mike McKool, Jr.
Texas State Bar No. 13732100
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
mmckool@mckoolsmith.com

T. Gordon White
Texas State Bar No. 21333000
300 West Sixth Street, Suite 1700
McKool Smith, P.C.
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker, P.C.
Texas State Bar No. 15498000
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 533-9288
Telecopier: (903) 533-9687
rmparker@cox-internet.com

**ATTORNEYS FOR PLAINTIFF
AMERICAN VIDEO GRAPHICS, LP.**

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 7th day of February, 2005.

                                                           /s/ Sam Baxter
                                                Sam Baxter

Austin 19453v1