IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| AMERICAN VIDEO GRAPHICS, L.P. | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION |
| | § | |
| | § | 6:04-cv-00398-LED |
| vs. | § | |
| | § | |
| ELECTRONIC ARTS, INC., et al., | § | JURY TRIAL |
| | § | |
| Defendants. | § | HEARING: |
| | § | 3:00 p.m. |
| | § | March 9, 2005 |

**MOTION TO COMPEL SUPPLEMENTAL DISCLOSURES
PURSUANT TO PATENT RULE 3-1(c)**

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ........................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................................... 2

III.   DISCUSSION ...................................................................................................................... 2

    A.   The Applicable Disclosure Standards ...................................................................... 2

    B.   AVG's Claim Charts Fail To Meet P. R. 3-1(c)'s Disclosure Requirements ............. 3

    C.   The Additional Information Informally Supplied By AVG Is Insufficient ................ 4

    D.   The Information Required By P. R. 3-1(c) Is Vital To The Publishers ...................... 5

    E.   AVG Has The Information Sought By This Motion ................................................... 7

IV.   CONCLUSION ...................................................................................................................... 7

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Network Caching Tech., LLC v. Novell, Inc.*,
   2003 WL 21699799 (N.D. Cal. 2003) ....................................................................3, 7

*STMicroelectronics, Inc. v. Motorola, Inc.*,
   308 F. Supp. 2d 754 (E.D. Tex. 2004)................................................................3, 4, 6, 7

**Rules**

Patent Rule 3-1(a) ............................................................................................ *passim*

Patent Rule 3-1(b) ........................................................................................... *passim*

Patent Rule 3-1(c) ........................................................................................... *passim*

# I.

## PRELIMINARY STATEMENT

Nine of the twelve game publishers that plaintiff American Video Graphics ("AVG") originally sued in the '398 action (the "Publishers")[1] respectfully move the Court for an order compelling AVG to provide supplemental disclosures pursuant to Patent Rule 3-1.  This rule requires that AVG produce, as part of its preliminary infringement contentions, "[a] chart identifying *specifically where* each element of each asserted claim is found within each Accused Instrumentality."  P. R. 3-1(c) (emphasis supplied).

Here, AVG provided claim charts to the Publishers, but those charts do not identify "specifically where" each claim element is found in each of the 823 products accused of infringement.  Instead, AVG's charts do no more than simply paraphrase or quote the elements of the claim language and assert the presence of each element in all 823 of the accused games.  As a result, the Publishers are left to guess why any particular product has been accused of infringement by AVG.

For all of the reasons set forth herein, the Publishers respectfully request that the Court issue an order compelling AVG to provide supplemental disclosures under P.R. 3-1(c) identifying "specifically where" in each accused product AVG claims it has found evidence of infringement.  As discussed further below, this will not impose an undue burden on AVG, since it already has this information on hand.  Nor are we asking the Court to micro-manage AVG's disclosure obligations in this admittedly complex case.  Rather, we are simply asking that AVG point to whatever it is in each game that AVG claims embodies or reflects the patented technology, so that the Publishers can evaluate the merits of AVG's allegations and defend themselves in this lawsuit.

---

[1] The Publishers are: Activision, Inc.; Atari, Inc.; Electronic Arts Inc.; LucasArts, a Division of Lucasfilm Entertainment Company Ltd.; Sega of America, Inc.; Take-Two Interactive Software, Inc.; THQ Inc.; Ubisoft, Inc.; and Vivendi Universal Games, Inc.

## II.

## FACTUAL BACKGROUND

AVG filed its original complaint against the Publishers in this action on or after August 23, 2004, alleging infringement of U.S. Patent No. 4,734,690, entitled "Method And Apparatus For Spherical Panning" (the "'690 patent").  The operative pleading in this matter is AVG's Second Amended Complaint, filed February 7, 2005, which alleges that 15 of the Publishers' video games infringe the '690 patent.

On January 20, 2005, AVG served its Disclosure of Asserted Claims and Preliminary Infringement Contentions, as required by P. R. 3-1.  In that document, AVG alleges that 823 of the Publishers' games infringe the '690 patent.  At the same time, AVG provided charts that purport to map the elements of the '690 patent against the accused games.  The sufficiency of those charts is what is now at issue.[2]

## III.

## DISCUSSION

### A.   The Applicable Disclosure Standards

Patent Rules 3-1(a) and (b) require that the plaintiff identify, as part of its preliminary infringement contentions, which claims of the '690 patent it contends are infringed, and which of the defendants' products infringe those claims.  AVG has complied with these obligations, and neither is at issue.

Patent Rule 3-1(c) requires that the plaintiff provide "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."  Thus, after identifying the asserted claims and the accused products in accordance with P. R. 3-1(a) and (b), the Court's rules further require the plaintiff to point out "specifically where" in each of the accused products the claim elements may be found.

---

[2] *See* Appendix to Motion to Compel for a complete set of AVG's claim charts or, for a sample, *see* Exhibit 1.

2

This Court addressed the specificity required by the plaintiff's Rule 3-1(c) disclosure obligation in *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754 (E.D. Tex. 2004).  While the Court elected not to become involved in the parties' discovery dispute due to the particular complexities of that litigation, and ultimately denied a motion to compel, the Court articulated a cardinal principle governing Rule 3-1 disclosures.  Specifically, the notice of infringement required by Rule 3-1 must "set[] forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement *beyond that which is provided by the mere language of the patent[s] themselves*."  *Id.* at 755 (quoting *Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL 21699799, *4-5 (N.D. Cal. 2003)) (emphasis supplied).[3]  It is with that principle in mind that we now turn to AVG's Rule 3-1(c) disclosures in this case.

**B.      AVG's Claim Charts Fail To Meet P. R. 3-1(c)'s Disclosure Requirements**

AVG's charts simply paraphrase or quote the elements of the claim and then sweepingly assert the presence of those elements somewhere in all of the accused games.  The charts do not provide the Publishers with any notice beyond what little the Publishers could gleam from reading the patent.

The very first chart provided by AVG is as good an example as any.  This chart, a copy of which is attached as Exhibit 1, purports to correlate the elements of Claim 1 of the '690 patent with 109 accused games published by Activision.  Claim 1 is a method claim reciting a number of steps.  The second step of that claim is "defining a second three-dimensional coordinate space as a viewing space from which the object may be viewed."  AVG's chart, repeating the exact language of the claim, simply states that "[e]ach Accused Instrumentality listed in Ex. B-1

---

[3]  The Court found Northern District of California caselaw persuasive because "the relevant portions of the Court's Patent Rule 3-1 are exactly the same as that court's Patent LR 3-1." *Id.* at 755 n.1.

[attached as Exhibit 2] defines a second three-dimensional coordinate space as a viewing space from which the object may be viewed."

Neither AVG's chart nor any other information provided by AVG identifies "*specifically where*" in any one of the accused games this step may be found, let alone in *each* of the accused games (as P. R. 3-1(c) expressly requires). Although AVG apparently saw something in each of Activision's 109 games that led it to believe this step was in fact performed, AVG's chart does not disclose where in these games AVG found this step being performed. Nor is this information provided for any one of the other accused games.

As a result, the charts provide no information beyond the list of asserted claims and accused products called for by Rules 3-1(a) and (b). AVG has therefore failed to provide notice of infringement that goes "beyond that which is provided by the mere language of the patent[]" at issue, *STMicroelectronics*, 308 F. Supp. 2d at 755, and has not put the Publishers on reasonable notice of the basis upon which 823 of their games have been accused of infringing the '690 patent.

## C. The Additional Information Informally Supplied By AVG Is Insufficient

In the course of the extensive meet and confer process that preceded this motion, AVG informally provided some additional information on its theory of infringement. For example, AVG pointed to the replay function in the sports games as an example of what it believes to be infringing functionality. Additionally, AVG advised the Publishers that many of the games have the accused functionality available at the user's control throughout the entirety of the game.

Even with this information, however, the Publishers still cannot say, for any specific game, where or how it is in *that* game AVG believes it is infringing. This is because the additional information informally provided by AVG has always been qualified, and never

directed toward any specific accused game.  For example, in AVG's recent letter to the Court, AVG made the following general statements about the 823 games at issue:

- "for *many* of the sports games, this capability *typically* occurs when the game is in 'replay' mode"[4]

- "in the *vast majority* of games, the infringement occurs throughout the game at virtually any instance desired by the player"[5]

- "these capabilities are *often* described in the instruction book...."[6]

These highly generalized, informal statements fall short of the requirements of Rule 3-1(c) because they do not put the Publishers on notice as to why any *particular* game has been accused of infringement.

**D.      The Information Required By P. R. 3-1(c) Is Vital To The Publishers**

The information required by P. R. 3-1(c) is critical to the Publishers because they need to know the factual basis upon which AVG is currently accusing each particular game of infringement.  If it is because of the replay mode, AVG should say so, and indicate how a user would implement the accused functionality while the game is in the replay mode.[7]  If it is one of the "vast majority" of games where infringement allegedly occurs "throughout the game at virtually any instance desired by the player," AVG should say so, and indicate how the user would manipulate the game controls to implement this functionality.  AVG has collected this information, and should disclose it so that the Publishers are not forced to guess about AVG's infringement theories.

---

[4]  Feb. 17, 2005 Letter from T. Gordon White to Hon. Leonard E. Davis, p. 2.

[5]  *Id.*

[6]  *Id.*

[7]  The replay mode of any particular game may have several sub-modes, each with differing functionality.

An example may help illustrate the problem the Publishers face.  One of the Publishers, THQ Inc. ("THQ"), has 76 games on the list of accused products.  Matthew Elzie, an analyst in the Game Evaluation Group at THQ, recently looked at two of the accused THQ games after reviewing AVG's claim chart for THQ as well as the informal correspondence from AVG to THQ's counsel and to this Court providing additional information about its infringement contentions.  Mr. Elzie is responsible for evaluating the features and "playability" of THQ's video games from the vantage point of the user.  Mr. Elzie played *MX Superfly* for Playstation 2 and *Dark Summit* for Xbox, looking for the feature that AVG describes in its letters.

As set forth in the accompanying declaration, Mr. Elzie could not find this feature and neither he nor THQ's undersigned counsel has any idea why *MX Superfly* or *Dark Summit* are on AVG's list of accused games.  This is an example of why this information is needed, and why AVG should comply with P. R. 3-1(c).

This Court has made it clear that one of the key purposes of Rule 3-1 is to "streamline the discovery process."  *STMicroelectronics*, 308 F. Supp. 2d at 755.  Streamlining discovery is particularly crucial here, given the sheer number of accused products.  Compliance with Rule 3-1(c) is thus far more important in this case than in the ordinary case involving one, two or even a couple of dozen accused products, particularly given the ambitious schedule for resolution of this case.

As the Court knows, there is no more closely guarded trade secret in a software company than the proprietary source code for a published software program such as a video game, and there are few subjects that arouse more concern and anxiety among software companies than the production of such code in litigation.  This Court's Patent Rules presuppose that when the Publishers comply with their obligations under the Patent Rules and deposit the source code for the accused games into escrow, the Publishers will be on notice as to the factual basis upon which each such game has been accused of infringement.

**E.**     **AVG Has The Information Sought By This Motion**

AVG cannot credibly argue that it lacks the information the Publishers seek through this motion.  AVG advised this Court that it has purchased and reviewed more than 1,500 video games before making the allegations of infringement contained in its Rule 3-1 disclosures.[8] AVG apparently saw something in the accused games that led it to believe that the 823 accused games—and not others—infringe the '690 patent.  We would simply like to know, for each accused game, what AVG saw that led it to conclude the game was infringing, and *where* it saw it.  AVG has this information, because they collected it for each of the accused games.

The Publishers are not asking AVG for "excruciating detail" about its infringement theories.  *Network Caching*, 2003 WL 21699799 at *5.  Nor are the Publishers asking AVG to produce an exhaustive technical analysis of each accused game or screen shots displaying the functionality of each accused game.  We realize that AVG does not yet possess source code and that the preliminary infringement contentions "are not meant to provide a forum for litigation of the substantive issue."  *STMicroelectronics*, 308 F. Supp. 2d at 755.  Here, the Publishers would simply like to know AVG's most *basic* contention as to why *each particular game* is on AVG's list of accused products and the Publishers are indifferent to the format such information takes.[9]

**IV.**

**CONCLUSION**

In sum, AVG has additional information about each of the accused games that is necessary to the Publishers' understanding of AVG's infringement allegations.  P. R. 3-1(c)

---

[8]  Feb. 17, 2005 Letter from T. Gordon White to Hon. Leonard E. Davis, p. 1.

[9]  For example, in our informal attempts to resolve this dispute with AVG, the Publishers gave AVG the following guidance: "We don't care how AVG provides this information.  It can be screen shots, as some of the other publishers have requested.  It can be a narrative description.  It can be anything you want.  As long as AVG points to ***something*** that will allow us to look at the same portion of the accused games that AVG was looking at when it decided that those games infringe the '690 patent."  *See* Decl. of Wayne M. Barsky, Exh. 1 (Feb. 3, 2005 email from Wayne M. Barsky to Darryl Burke).

requires the disclosure of this vital information now, as part of the plaintiff's preliminary

infringement contentions.  Accordingly, the Publishers respectfully request that the Court grant

this motion and order AVG to promptly provide the disclosure contemplated by P. R. 3-1(c).

Dated:  February 25, 2005

                                        Respectfully submitted,


                                        By: /s/ Clyde M. Siebman
                                            SIEBMAN REYNOLDS BURG & PHILLIPS
                                            LLP
                                            Clyde M. Siebman
                                            Texas State Bar No. 18341600
                                            300 North Travis Street
                                            Sherman, Texas  75090-0070
                                            Telephone: (903) 870-0070
                                            Facsimile: (903) 870-0066
                                            siebman@texoma.net

                                            GIBSON, DUNN & CRUTCHER LLP
                                            Wayne M. Barsky, attorney-in-charge
                                            California State Bar No. 116731
                                            David A. Segal
                                            Y. Ernest Hsin
                                            Jacqueline G. Curnutte
                                            2029 Century Park East, Suite 4000
                                            Los Angeles, California  90067
                                            Telephone: (310) 552-8500
                                            Facsimile: (310) 551-8741
                                            wbarsky@gibsondunn.com

                                            Attorneys for Defendants Activision, Inc.;
                                            Atari, Inc.; Electronic Arts Inc.;
                                            LucasArts, A Division of Lucasfilm
                                            Entertainment Company Ltd.; Sega of
                                            America, Inc.; Take-Two Interactive
                                            Software, Inc.; THQ Inc.; Ubisoft, Inc.;
                                            and Vivendi Universal Games, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 25th day of February 2005, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

/s/ Clyde M. Siebman
Clyde M. Siebman

## CERTIFICATE OF CONFERENCE

Counsel for the Publishers have conferred at great length with AVG's counsel in a good faith and diligent attempt to resolve this discovery dispute over the past month, but have reached an impasse. *See* Decl. of Wayne M. Barsky and exhibits attached thereto.  This motion is opposed.


  /s/ Clyde M. Siebman

Clyde M. Siebman

LA_10848645_1 (2).DOC

10